***********
The undersigned reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell. The appealing party has shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission rejects the findings of *Page 2 
fact in the Opinion and Award of Deputy Commissioner Rowell and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Defendant and plaintiff are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the plaintiff and defendant on or about November 16, 1992.
3. Defendant is self-insured, with Key Risk Management Services, Inc. as the third-party administrator.
4. An Industrial Commission Form 22 Wage Statement may be used to calculate plaintiff's average weekly wage.
5. Employee alleges she suffers from Major Depression and Post Traumatic Stress Disorder.
6. The parties stipulated to a Pre-Trial Agreement to include Industrial Commission forms, medical records, employment information and various correspondence paginated 1-61. This documentation was marked as Stipulated Exhibit # 1 and made a part of the record.
7. The parties stipulated during a Pre-Trial Conference and on the record that the issues at bar would be bifurcated and a ruling would first be made on defendant's issue of whether plaintiff's claim is time barred pursuant to N.C. Gen. Stat. §§ 97-22, 97-24 and/or 97.25.1. *Page 3 
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Full Commission, plaintiff was fifty-one (51) years of age. Plaintiff graduated from West Craven High School in Vanceboro, North Carolina in 1974.
2. Plaintiff began employment with defendant as a Health Care Technician in 1992, usually working five eight-hour shifts per week and had held her position for approximately 3 months prior to her alleged injury.
3. On November 16, 1992, plaintiff was injured while working for defendant when she was physically attacked by one of defendant's patients. This incident was witnessed by several of defendant's employees, including a supervisor. The attack caused pain in plaintiff's legs and stomach, which caused her to report the incident and seek medical attention immediately. Plaintiff was treated in Employee Health with defendant for physical injuries. Defendant accepted compensability for plaintiff's physical injuries.
4. On November 17, 1992, defendant filed a Form 19, Employer's Report of Injury to Employee.
5. On December 22, 1992, plaintiff treated at Wayne Psychiatric Associates, with Dr. Gagliano, who diagnosed plaintiff with major depression and took plaintiff out of work for one week. On January 5, 1993, Dr. Gagliano took plaintiff out of work for one month.
6. On January 14, 1993, Dr. Luedtke, a psychologist, diagnosed plaintiff with dysthemic disorder, anxiety, agitation, adjustment disorder with anxious mood, and post *Page 4 
traumatic stress disorder. On January 26, 1993, Dr. Luedtke took plaintiff out of work for two weeks to adjust to new medications.
7. On February 3, 1993, plaintiff filed a Form 18, Notice of Accident to Employer and Claim of Employee. On February 10, 1993, the North Carolina Industrial Commission acknowledged receipt of a report of an injury. On March 8, 1993, the North Carolina Industrial Commission acknowledged receipt of plaintiff's Form 18, and recognized a claim filed by plaintiff against defendant.
8. On February 22, 1993, Dr. Luedtke recommended that plaintiff return to work with limitations. From March 12, 1993 through June 30, 1993, plaintiff returned to work for defendant in a position within plaintiff's limitations prescribed by Dr. Luedtke.
9. On March 15, 1993, defendant's counsel sent a letter to plaintiff's counsel denying liability for plaintiff's psychological condition and requesting that plaintiff get a second opinion from Dr. Gagliano regarding plaintiff's psychological condition.
10. On April 5, 1993, plaintiff's counsel notified defendant that plaintiff would not get a second opinion from Dr. Gagliano.
11. On April 15, 1993, defendant notified plaintiff's counsel that pursuant to N.C. Gen. Stat. § 97-27(a), by refusing to get a second opinion at defendant's request that plaintiff's right to prosecute her claim is suspended.
12. On July 1, 1993, defendant informed plaintiff that she was expected to return to work in her regular job in the nursing unit, which she did.
13. On May 17, 1994, plaintiff's previous counsel filed a motion with the Industrial Commission to withdraw as plaintiff's counsel, citing his reason for withdrawal as plaintiff had requested that he withdraw from representing her. However, when questioned at the hearing *Page 5 
before the deputy commissioner about why her former her attorney could not represent her any longer, plaintiff testified, "I don't know. The attorney passed away. That's all I know."
14. Plaintiff continued employment with defendant from July 1993 until she voluntarily resigned on November 3, 1994 for reasons unrelated to her November 16, 1992 injury.
15. Plaintiff continued to receive psychological treatment allegedly related to her injury by accident on November 16, 1992. At the time of the hearing before the deputy commissioner, plaintiff was receiving psychological treatment by Dr. Edwin Hoeper. Plaintiff testified that she began treating with Dr. Hoeper in 1999 after treating with Dr. Luedtke.
16. On January 1, 2006, almost 13 years after plaintiff's psychological benefits were denied, plaintiff filed a Form 33 seeking medical and indemnity compensation as a result of the November 16, 1992 injury and retroactive to 1993. This was defendant's first notice that plaintiff was seeking further benefits since her claim for psychological treatment was denied in 1993. The undersigned find that plaintiff's 13-year delay in prosecuting her claim is unreasonable, and that based upon plaintiff's testimony, plaintiff was aware of her condition requiring psychological treatment during this 13-year time period, but deliberately chose not to seek medical compensation.
17. On February 10, 2006, plaintiff's present attorney was acknowledged by the Industrial Commission. Therefore, from May of 1994 until February of 2006, plaintiff did not obtain counsel in order to pursue her claim even though plaintiff was aware that her psychological claim had been denied.
18. Plaintiff testified that she made several attempts over the years to contact defendants to seek medical treatment; however, plaintiff could not recall specific information *Page 6 
regarding these attempts or specific facts regarding her case and treatment over the last thirteen (13) years. In addition when plaintiff was questioned about her psychological condition and medical treatment, plaintiff was not able to recall information regarding her history of medical treatment. The undersigned find that plaintiff's testimony is not credible and give greater weight to the testimony of Lisa Justice than that of plaintiff.
19. Lisa Justice became a claims adjustor for Key Risk Management in February 2005. Ms. Justice became involved in the case when she received plaintiff's Form 33 dated January 1, 2006. Key Risk had no record of the claim. Ms. Justice testified that to her knowledge Key Risk had not been involved in the case until 2006. She further testified that Key Risk had not received any telephone calls, messages, or requests to pay for any medical treatment for plaintiff. Neither Key Risk nor Cherry Hospital paid or caused to be paid for any medical treatment related to plaintiff's November 16, 1992 injury. In addition, in order to obtain information regarding plaintiff's case, Ms. Justice had to contact defendant to locate the file on plaintiff's claim from 1992. Although plaintiff's file was so old it had been archived, defendant was eventually able to locate her file.
20. Due to her unreasonable delay, plaintiff has essentially abandoned and failed to prosecute her claim. Plaintiff's deliberate and unreasonable delay has hindered defendant's ability to investigate her claim and prevented defendant from providing treatment to lessen plaintiff's period of disability. Based upon plaintiff's unreasonable delay which prejudiced defendant, sanctions short of dismissal will not suffice.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW *Page 7 
1. Pursuant to N.C. Gen. Stat. § 97-22, plaintiff was required to give immediate notice of her accident to defendant. N.C. Gen. Stat. § 97-24
further required that plaintiff file a claim with the Industrial Commission within two years of her injury by accident in order to preserve her right to adjudication of her claim. Since plaintiff gave immediate notice of her injury and timely filed a Form 18 on February 3, 1993, plaintiff's claim is not barred under N.C. Gen. Stat. § 97-22 or N.C. Gen. Stat. § 97-24.
2. Under N.C. Gen. Stat. § 97-25.1, the right to medical compensation shall terminate two years after the employer's last payment of medical or indemnity compensation unless, prior to the expiration of this period, either: (i) the employee files with the Commission an application for additional medical compensation which is thereafter approved by the Commission, or (ii) the Commission on its own motion orders additional medical compensation. However, N.C. Gen. Stat. § 97-25.1 was not enacted until 1994, after plaintiff's claim. Therefore, N.C. Gen. Stat. § 97-25.1
is not applicable to the case sub judice. McAlister v. Wellman, Inc.,162 N.C. App. 146, 590 S. E.2d 311 (2004).
3. Plaintiff's claim is barred under North Carolina Industrial Commission Rule 613(1)(c). Pursuant to Industrial Commission Rule 613(1)(c), upon proper notice and an opportunity to be heard, any claim may be dismissed with or without prejudice by the Industrial Commission on its own motion or by motion of any party for failure to prosecute or to comply with these Rules or any Order of the Commission. Prior to dismissing a claim pursuant to Rule 613(1)(c) the Commission must find (1) that plaintiff acted in a manner which deliberately or unreasonably delayed the matter, (2) defendant was prejudiced by the plaintiff's delay or failure *Page 8 
to prosecute, and (3) that sanctions short of dismissal would not suffice. Lee v. Roses, 162 N.C. App. 129, 590 S.E. 2d 404 (2004).
4. In this case, plaintiff waited thirteen years to seek benefits and medical compensation following defendant's notice to plaintiff that her claim for psychological injury was denied. Following defense counsel's March 15, 1993 and April 15, 1993 letters to plaintiff's counsel, plaintiff was clearly on notice that defendant was denying plaintiff's claim for psychological treatment. It was plaintiff's burden to prove that her psychiatric treatment was related to her employment with defendant, and plaintiff chose not to pursue her right to request a hearing and pursue her claim. When defendant denied plaintiff's claim for psychiatric treatment, plaintiff was represented by counsel and had the opportunity to pursue other statutory remedies under N.C. Gen. Stat. §§ 97-25 and 97-83, but failed to do so.
5. Plaintiff did not seek compensation following the denial by defendants. Although plaintiff knew of the existence of the grounds for a potential claim against defendant for her November 16, 1992 injury, plaintiff did not pursue her claim acting on her own behalf nor by hiring another attorney to pursue her claim until 2006. Plaintiff even continued to work for defendant until she voluntarily resigned in November of 1994. Given the fact that plaintiff was aware that she had a denied workers' compensation claim, continued to receive treatment at her own expense, and waited thirteen years to seek compensation, plaintiff's delay in time in prosecuting her claim was deliberate and unreasonable. Lee v. Roses, 162 N.C. App. 129, 590 S.E. 2d 404 (2004).
6. Plaintiff's unreasonable delay in the prosecution of her workers' compensation claim prejudiced defendant. Id. Defendant has been denied the opportunity to further investigate plaintiff's claim, direct medical treatment, and to provide medical treatment necessary to effect a *Page 9 
cure, provide relief or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25. A thirteen-year delay such as plaintiff's makes it difficult for defendant to obtain plaintiff's medical history dating back thirteen years, particularly when plaintiff has not treated with some of her doctors for over seven years. Further, defendants were denied the opportunity to mitigate any exacerbations of plaintiff's condition potentially related to plaintiff's workers' compensation claim. Therefore, defendant has been substantially prejudiced by plaintiff's delay and failure to prosecute her claim, and sanctions short of dismissal will not suffice. Lee v. Roses, 162 N.C. App. 129,590 S.E. 2d 404 (2004).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Plaintiff's claim is hereby DISMISSED WITH PREJUDICE.
2. Each side shall bear it's own costs.
This the 11th day of June, 2009.
S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
S/_____________ DIANNE C. SELLERS COMMISSIONER *Page 10 
S/_______________ PAMELA T. YOUNG CHAIR *Page 1